UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **RAZOR USA LLC AND SHANE CHEN,** | Civil Action No. 19-12939 (JMV) |
| Plaintiffs, | |
| v. | |
| **DGL GROUP, LTD.,** | |
| Defendant. | **OPINION** |

**F<small>ALK</small>, U.S.M.J.:**

Before the Court is a dispute as to the terms of a proposed Discovery Confidentiality Order ("DCO"). The parties disagree on whether the DCO should contain a provision which would allow Plaintiffs' in-house counsel access to Defendant's highly confidential, attorneys' eyes only-designated material. The terms of the provision would preclude disclosure to an attorney with "responsibility for pricing, product, or other competitive business decision making." The parties submitted letters addressing the dispute. (CM/ECF Nos. 38 and 39.)

The Court has reviewed the parties' submissions. The dispute is decided on the papers. Fed.R.Civ.P. 78(b). For the reasons set forth below, Plaintiffs' request that the discovery confidentiality order contain a provision permitting disclosure of the confidential material to its in-house is **granted**.

## BACKGROUND

This is a patent infringement case involving patents related to two-wheeled electric vehicles commonly known as "hoverboards." Plaintiffs Razor USA LLC and Shane Chen (jointly "Razor") are the owner/exclusive licensee of two patents for the hoverboards. (Compl. ¶¶ 8-15.) Razor filed suit against DGL Group, LTD. ("DGL"), its competitor in the hoverboard market, alleging infringement of its patents.[1]

The parties agree that there should be a discovery confidentiality order entered in this patent case but disagree on one issue. DGL requests that the Court enter the standard discovery confidentiality order contained in Appendix S to the Court's Local Civil Rules. Razor seeks to include the following provision in the discovery confidentiality order, to which DGL objects:

> Unless otherwise ordered by the Court or permitted in writing by the Designating Party, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material shall not be disclosed, directly or indirectly, to anyone except the following . . . (e) Up to one (1) in-house attorney for each Party having responsibility for maintaining, defending, or evaluating this litigation, ***but not responsib[le] for pricing, product, or other competitive business decision making*** . . . .

(CM/ECF No. 25.) If included, this provision may provide access by Razor's only in-house counsel, John Cochrane ("Cochrane"), to DGL's highly confidential-attorneys' eyes only material. The parties originally raised this dispute with the Court informally after which the Court entered an Order directing, among other things, that Razor's in-

---

[1] On May 24, 2019, Plaintiffs filed suit against Defendant alleging infringement of U.S. Reissue Patent No. RE46,964 (the "RE964 Patent") and U.S. Design Patent No. D739,906 (the "D906 Patent"). Plaintiffs seek, among other things, injunctive relief, damages for Defendant's alleged infringing acts, and Plaintiffs' attorneys' fees.

house counsel certify, in writing, that he has no role in competitive decisionmaking. In compliance with the Court's Order, Cochrane provided DGL with a certification detailing his role at Razor. (Certification of John W. Cochrane, Esq. ("Cochrane Certif.") CM/ECF No. 38-2.)[2] Upon receipt of Cochrane's certification, DGL advised that Court that the parties remained at an *impasse*. The Court permitted the parties to submit additional submissions on the dispute.

DGL maintains that Cochrane's certification presents many of the hallmarks demonstrating the high risk of inadvertent disclosure and therefore opposes his access to DGL's highly confidential material. In particular, DGL points to Cochrane's certification wherein he states that he is "not responsible" for competitive decisionmaking, arguing that Cochrane declined to include the phrase not "involved in" as originally proposed by DGL. *See* n. 2. DGL also argues that the risk of inadvertent disclosure is great because Cochrane is part of the management team at Razor, and advises it on compliance, regulatory and other legal issues related to competitive decisionmaking. In support of its argument that Cochrane is a competitive decisionmaker, DGL points out that Cochrane negotiates patent licenses. Lastly, DGL argues that the technical documents related to the accused products, sensitive financial information, and confidential information related to sales of the accused products produced by DGL could cause severe competitive harm if disclosed to Razor's personnel, including Cochrane.

---

[2] According to DGL, counsel conferred numerous times in order to better understand the role and responsibilities of Razor's in-house counsel, Mr. Cochrane. (CM/ECF No. 38, at 1.) After those discussions, DGL's counsel proposed a certification for Mr. Cochrane, which reflected DGL's understanding of Mr. Cochrane's responsibilities, and which contained language indicating that Mr. Cochrane is not "involved in" competitive decisionmaking. Razor's counsel returned a different signed certification from Mr. Cochrane.

In response, Razor contends that Cochrane's certification clearly establishes that he is not involved in competitive decisionmaking and that any risk of inadvertent disclosure of confidential materials is outweighed by the harm to Razor if access to Cochrane is barred. Razor emphasizes that Cochrane does not advise management on competitive issues, that is, he does not provide advice on how to price or design products or how to make similar decisions. Razor maintains that DGL's argument that Cochrane is involved in competitive decisionmaking simply because he provides legal advice to competitive decisionmakers on unrelated issues is without merit. Finally, noting that Cochrane is Razor's sole in-house attorney, Razor argues that it would sustain significant harm if he were denied access to the materials, including hampering his ability to supervise the litigation and to provide guidance regarding settlement discussions.

## DISCUSSION

### A. *Legal Standard*

Access to confidential information cannot be denied solely because of counsel's in-house status. U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984).[3] Courts conduct a two-step test to determine whether providing in-house counsel with access to highly confidential information should be permitted. First, courts are to assess "[w]hether an unacceptable opportunity for inadvertent disclosure exists." Id. at

---

[3] The Third Circuit has not opined a standard for determining whether in-house counsel should be permitted access to materials designated confidential under a DCO. In the absence of Third Circuit, courts in this circuit have looked to the guidance of the Federal Circuit found in U.S. Steel. See, e.g., Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc. No. 15-1836, 2016 WL 308795 at *3 (D.N.J. Jan. 25, 2016); Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., No. 08-6304, 2009 WL 3627947, at *2 (D.N.J. Oct. 29, 2009).

1469.  In making such an assessment, a court may consider an attorney's involvement in "competitive decisionmaking".  Id. at 1468, n. 3.  "Competitive decisionmaking" has been described as "counsel's activites, association, and relationship with a client that are such as to involve counsel's *advice and participation* in any or all of the clients' decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  Id.  Second, a court "must balance [risk of disclosure] against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice."  In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1380 (Fed. Cir. 2010) (citing U.S. Steel, 730 F.3d at 1468); Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc., No. 15-289, 2016 WL 308795, at *3 (D.N.J. Jan. 25, 2016).  The district court has broad discretion to decide what degree of protection is required.  In re Deutsche Bank, 605 F.3d at 1380.

### B. Analysis

The threshold question to be considered by the Court is whether allowing Cochrane access to attorney's eyes only information would create an unacceptable risk of inadvertent disclosure.  The Court finds that it does not.

Candidly acknowledging that he is sometimes called upon to advise senior management on regulatory, compliance, or other legal issues in connection with competitive decisionmaking, Cochrane unambiguously states in his certification that he is "*not involved* in making decisions related to pricing, product design, purchasing, sales, selection of vendors, marketing, or overall corporate strategy." (Cochrane Certif. at ¶ 4) (emphasis added.)  According to his certification, Cochrane does not provide advice to

Razor on how it should price its products, how it should design its products, or how Razor should make similar decisions. It is clear from his certification that Cochrane does not provide " 'advice and participation' in 'competitive decisionmaking' " . See Matsushita Elec. Indus. Co., Ltd. v. U.S., 929 F.2d 1577, 1579-80 (Fed. Cir. 1991). His legal advice on regulatory, compliance, or other legal issues does not amount to being personally involved in competitive decisonmaking under the case-by-case, fact sensitive analysis of U.S. Steel. Moreover, Cochrane certifies that he will not engage in any competitive decisionmaking during the course of the subject litigation. (Cochrane Certif. at ¶ 5.)

Nor does Cochrane's involvement in the negotiation of licenses necessarily equate to involvement in competitive decisionmaking. See Pfizer, Inc. v. Apotex, Inc., 744 F. Supp. 2d 758, 766 (N.D. Ill. 2010) ("[E]quating licensing and competitive decisionmaking as a *per se* matter does not conform with the Federal Circuit's long-standing directive that competitiveness can only be determined on a case-by-case basis.") This is particularly true because Cochrane is not responsible for deciding "which licenses to give or pursue from others[.]" (Cochrane Certif. at ¶ 6.)

The fact that Cochrane reports directly to Razor's CEO does not mean that he is involved in competitive decisionmaking. Although he is "technically part of senior management", he is "not part of any specific management team at Razor." (Cochrane Certif. at ¶ 8.) Cochrane attests that his role is "limited to advising senior management on regulatory, compliance and other legal issues," not business or other competitive strategic matters. Id. Furthermore, Cochrane certifies that he is separated from the CEO

geographically—Cochrane being located in Southern California and the CEO working in the Seattle office—and that he speaks with the CEO only a few times a year. Finally, Cochrane states that no one other than the information technology department has access to his computer. He further certifies that he will take procedural safeguards to minimize the risk of inadvertent disclosure. (Cochrane Certif. at ¶ 11.)

For the reasons stated above, the Court finds that Cochrane does not engage in competitive decisionmaking. Further, the Court finds that Cochrane has been "functionally, geographically, and technologically isolated" and that therefore the risk of inadvertent disclosure posed by Cochrane is minimal. Sanofi-Aventis U.S. LLC, 2016 WL 308795, at *5.

The Court turns to the second prong of the test and assesses the harm to Razor if Cochrane were denied access to the confidential materials. Cochrane is the only in-house attorney at Razor. (Cochrane Certif. at ¶ 4.) If Cochrane were not to have access to the confidential material, Razor would essentially be denied its "right to have the benefit of counsel of its choice." In re Deutsche Bank, 605 F.3d at 1380. Cochrane is the only person at Razor who is in a position to supervise the litigation and guide outside counsel regarding its direction. (CM/ECF No. 39, at 6.) His lack of access to the confidential information would impede his ability to perform his role at Razor, including limiting his ability to assess the merits of the case and provide guidance regarding settlement of the matter.

The Court recognizes that disclosure of the information contained in DGL's technical documents related to the accused products, sensitive financial information, and

confidential information related to sales of the accused products to certain persons at Razor could be harmful to DGL.  However, as explained above, given Cochrane's role and functions at Razor, the Court finds that the risk of inadvertent disclosure of this information is relatively low.

This decision is necessarily decided in generalities, e.g. confidential information.  If DGL is producing something it believes so sensitive that its specific disclosure to Mr. Cochrane would almost certainly cause a clearly defined serious harm, DGL may raise the issue with the Court prior to disclosure.  Presented with the specifics, the Court could perform a more refined balancing analysis. The parties are cautioned that such a challenge is reserved for an exceptional issue. Routine confidential information may be disclosed to Razor's sole in-house counsel.

## CONCLUSION

In sum, the Court finds that any risk of inadvertent disclosure of confidential materials is outweighed by the harm to Razor of barring Cochrane from accessing them. For the reasons set forth above, the Court finds that Cochrane should be permitted access to highly confidential, attorneys' eyes only-designated material.  Accordingly, Razor's request to include the provision permitting disclosure to in-house counsel in the discovery confidentiality order is **granted**.  An appropriate Order accompanies this Opinion.

   s/Mark Falk
   MARK FALK
   United States Magistrate Judge

**Dated: July 2, 2020**