<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAZOR USA LLC and SHANE CHEN, | : | **Civil Action No. 19-12939-JMV-AME** |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| DGL GROUP, LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on plaintiffs' motion for leave to amend their Fourth

Amended Infringement Contentions, pursuant to Local Patent Rule 3.7. Defendant opposes the

motion. Having considered the parties' written submissions, the Court decides the motion

without oral argument. Fed. R. Civ. P. 78(b). For the reasons that follow, the motion is granted in

part and denied in part.

### I.     Background

This patent infringement suit concerns self-balancing two-wheeled vehicles commonly

known as "hoverboards." Two patents are at issue here: U.S. Patent No. RE46,964 (the "RE964

Patent) and U.S. Design Patent No. D739,906 (the "D906 Patent"), each owned by plaintiff

Shane Chen and exclusively licensed to plaintiff Razor USA LLC.[1] Defendant DGL Group, Ltd.

("DGL") sells hoverboard products, generally named some variation of "Hover-1." Razor filed

this action against DGL on May 24, 2019, alleging the Hover-1 products infringe the RE964 and

D906 Patents, in violation of 35 U.S.C. § 271.

---

[1] For simplicity, the Court will refer to both plaintiffs collectively as "Razor."

On October 2, 2019, two weeks after the Court's initial scheduling conference, Razor served its Infringement Contentions on DGL, pursuant to Local Patent Rule 3.1. The initial Infringement Contentions were directed at claims 1, 3, 5-11, and 13-17 of the RE964 Patent and at the design claimed in the D906 Patent. Though several variations and models of the Hover-1 were identified as accused products in the Infringement Contentions, the accompanying claim chart used one of the products, the Hover-1 Ultra, as an exemplar to disclose where each limitation of the claims at issue was found in that product.[2] As to each limitation, Razor contended the Hover-1 Ultra infringed "both literally and under the doctrine of equivalents." (Jaketic Decl., Ex. 1.)

On November 20, 2019, DGL served its Response to Infringement Contentions, in which it denied infringement under the doctrine of equivalents and, moreover, asserted the contentions in support of the theory lacked any basis. It stated:

> In its LPR 3.1 Infringement Contentions, Plaintiffs provide no explanation or basis for its allegations that the Accused Instrumentalities allegedly meet any claim element as an "equivalent thereof" under the Doctrine of Equivalents. The evidence cited by Plaintiffs does not support or provide sufficient grounds or basis for any of its contentions under the doctrine of equivalents.

(*Id.*, Ex. 2 at 3.) In the responsive claim chart, DGL also emphasized its view that Razor's infringement contentions under an equivalence theory were merely conclusory, stating:

> In its contentions, Plaintiffs provide no explanation or basis for its contention that the Hover-1 Ultra allegedly meets the claim element as an alleged "equivalent thereof" as required under LPR 3.1(e). Plaintiffs have simply stated that it is believed that the doctrine of equivalents applies. DGL denies that the Hover-1 Ultra is an equivalent product under the doctrine of equivalents.

(*Id.*, Ex. 2.)

---

[2] Razor stated in its Infringement Contentions that it chose to use that product model to represent the way it contended all the Hover-1 products infringed the RE964 Patent.

Thereafter, on September 17, 2020, with leave of Court and the consent of DGL, Razor supplemented its Complaint, pursuant to Federal Rule of Civil Procedure 15(d), "to add the names of accused products so as to clarify (though not enlarge) the scope of the case." (Pl. Mot. at ECF 95-1 at 2.) It also obtained leave of Court to serve Amended Infringement Contentions for the purpose of identifying and providing contentions as to the additional accused products. Razor amended its Infringement Contentions, by consent, twice more, for this same purpose, as DGL provided supplemental responses to discovery disclosing additional hoverboard products.

This stipulated process of supplementing discovery responses and amending infringement contentions in a stepwise fashion is memorialized in the Court's Third Amended Scheduling Order, entered by Magistrate Judge Mark Falk on September 1, 2020 (the "September 2020 Order"). That order provided a framework for amending contentions and challenging their sufficiency, while making clear that any future attempts to amend or supplement must comply with the Patent Rules and the Federal Rules of Civil Procedure. (September 2020 Order, ECF 92 at ¶ 1.) Its streamlined process for raising objections to any proposed amendments provided:

> The parties will raise any concern about the propriety or sufficiency of another party's Local Patent Rule 3 contentions or responses relating to the issue of infringement within 14 days of service of such contentions and, if the parties are unable to resolve the issue, will promptly raise the issue with the Court via a short one-paragraph letter or email.

(*Id.* at ¶ 5.) The September 2020 Order also provided that, in stipulating to that process, the parties acknowledged that "[n]o party concedes that any other party's Local Patent Rule 3 contentions or responses regarding the issues of infringement or validity, either as presently existing or as amended in the future, are sufficient under the local patent rules." (*Id.* at ¶ 4.) Thus, pursuant to the September 2020 Order, and with leave of Court, Razor served its Second

Amended Infringement Contentions in September 2020, Third Amended Infringement

Contentions in October 2020, and Fourth Amended Infringement Contentions in June 2021.

Following entry of the September 2020 Order, the parties engaged in ongoing discussions

concerning DGL's position that Razor's Infringement Contentions were deficient under Patent

Rule 3.1. Razor appears to have initiated communications with DGL on this topic shortly after

service of DGL's response to Razor's Second Amended Infringement Contentions, in which

DGL reiterated its position that Razor's doctrine of equivalents contentions lacked a basis. In a

November 13, 2020 email to DGL, Razor asserted that, in its view, the time for DGL to raise

such concerns about the "propriety or sufficiency" of Razor's contentions had passed under the

September 2020 Order's framework. (Katzenellenbogen Decl., Ex. 5 at 4 ECF 189-7).

Nevertheless, Razor asked to meet and confer with DGL to discuss those concerns. (*Id.*). In

response, DGL asserted that it had timely raised deficiencies, as its response to the Second

Amended Infringement Contentions "largely tracked with the deficiencies that DGL first

identified in its LPR 3.2A Response to Plaintiffs' Infringement Contentions, which it served on

Plaintiffs back on November 20, 2019." (*Id.*)

A series of emails exchanged thereafter indicate the parties' disagreement over not only

the sufficiency of Razor's Infringement Contentions but also over which party had the burden of

raising those concerns with the Court. These exchanges appear to have culminated with a

December 24, 2020 letter from DGL to Razor, in which DGL explained its position that Razor's

doctrine of equivalents contentions were deficient under the Patent Rules and could not be

amended at this late date, under relevant caselaw. DGL stated:

> As we discussed in our meet and confer on December 11, 2020, DGL is
> concerned that Plaintiffs are presenting half-baked theories of
> infringement or worse (as in the case of doctrine of equivalents) and will
> spring new infringement theories in an expert report or at a later stage of

4

> this litigation. This is plainly not allowed under the Local Rules. *See Eagle View* 2017 U.S. Dist. LEXIS 195828 at *12 ("Plaintiffs' boilerplate amounted to a reservation of their right to assert a DOE theory. This is not permitted."); *see also Howmedica Osteonics Corp. v. Depuy Orthopaedics, Inc.*, C.A. No. 11-6498 (SDW), 2014 U.S. Dist. LEXIS 164740 at *16 (D.N.J. Nov. 24, 2014) ("The issue presented here is simply a matter of fairness. Given that this District's Local Patent Rules unambiguously require litigants to disclose the specifics of their legal theories in the early stages of the litigation, it would be unfair to allow a party to assert an infringement theory at the summary judgment stage that had never been asserted with any specificity at any prior point in the litigation."). Accordingly, DGL reserves the right to oppose any belated attempt by Plaintiffs to recast their infringement theories later in this case.

(Jaketic Decl., Ex. 3.) It appears that, throughout the first half of 2021, the parties continued to confer about this issue and other matters concerning their respective infringement and invalidity contentions. Meanwhile, the case continued to progress. Discovery and active case management continued, and on February 19, 2021, the District Court issued its *Markman* Opinion and Order, construing various dispute claim terms of the RE964 Patent.

On May 24, 2021, Razor provided a status update on the parties' efforts to resolve their dispute regarding its Infringement Contentions, reporting:

> The parties have not reached agreement regarding Plaintiffs' infringement contentions. However, the parties agreed on a procedure they hope will resolve the issue. Plaintiffs will create draft amended contentions providing the information that Plaintiffs understand DGL asserts is missing (and which Plaintiffs believe has been provided and/or is beyond what is required by the Local Rules). DGL will inform Plaintiffs if DGL consents to Plaintiffs' making such amendments without prejudice to DGL raising any other arguments. The parties will update the Court regarding the outcome of their further discussions.

(ECF 146 at 2.) Pursuant to this procedure, Razor provided draft amended contentions to DGL on June 4, 2021. In its June 24 response, DGL indicated it would consider consenting to some of the amendments, on the basis they were not substantive. However, it expressly disagreed with

any proposed amendments to Razor's doctrine of equivalents contentions. Further efforts to narrow and resolve the dispute were largely unsuccessful.

On July 30, 2021, Razor filed this motion for leave to serve its Fifth Amended Infringement Contentions.

## II.    LEGAL STANDARD

This motion to amend infringement contentions is governed by the Local Patent Rules. L. P. R. 1.2. The Patent Rules "are designed to require the parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2015 WL 4138982, at *4 (D.N.J. July 9, 2015); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (discussing substantially similar local patent rules in the Northern District of California). The rules "'seek to balance the right to develop new information in discovery with the need for certainty as to legal theories.'" *Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, No. 11-1997, 2013 WL 7901901, at *2 (D.N.J. Jan. 23, 2013) (quoting *O2 Micro Int'l*, 467 F.3d at 1366). To further that end, the Patent Rules require that a party asserting patent infringement serve its contentions within 14 days of the initial Scheduling Conference and set certain restrictions on the filing of amended contentions thereafter. L. Pat. Rules 3.1 and 3.7. In relevant part, Rule 3.7 provides that "[a]mendment of any contentions . . . required to be filed or exchanged pursuant to these Local Patent Rules may be made only by order of the Court upon a timely application and showing of good cause." L. Pat. R. 3.7.

Applying the Rule, courts have noted that, unlike the liberal standard for amending pleadings under Federal Rule of Civil Procedure 15(a), Patent Rule 3.7 implements a "conservative" approach to amending contentions, "designed to prevent the 'shifting sands'

6

approach to claim construction." *King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258 at *4 (D.N.J. May 20, 2010). "Sufficiently satisfying the elements set forth in Rule 3.7 is not a simple undertaking, and requires the movant to overcome a substantial preference against granting the amendment." *Nautilus Neurosciences*, 2013 WL 7901901, at *2. Even so, the rule "is not a straitjacket into which litigants are locked from the moment their contentions are served," but rather allows "a modest degree of flexibility, at least near the outset." (*Id.*)

In sum, under Patent Rule 3.7, the Court may grant leave to amend infringement contentions upon a showing that (1) the application is timely; (2) there is good cause for the amendment; and (3) the adverse party will not suffer undue prejudice if leave to amend is granted. *Celgene Corp.*, 2015 WL 4138982, at *4. The burden is on the moving party to demonstrate these criteria are met. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 WL 785067, at *2-3 (D.N.J. Feb. 28, 2013).

## III.   ANALYSIS

The Fifth Amended Infringement Contentions proposed by Razor contain various changes to the existing contentions, many of which DGL does not object to on the grounds that they are, in DGL's view, not directed to substantive issues.[3] Analysis of those amendments is not required insofar as the parties do not raise a dispute requiring resolution by the Court. Thus, as to the uncontested portions of the proposed Fifth Amended Infringement Contentions and

---

[3] Razor attaches its proposed Fifth Amendment Infringement Contentions and a representative claim chart to the Katzenellenbogen Declaration, submitted in support of its motion for leave to amend, and highlights the portions of those proposed amended documents to which DGL objects. (See Katzenellenbogen Decl. at ¶¶ 4-5, Ex. 3 and 4.) In its opposition brief, DGL indeed confirms it "does not oppose all of Plaintiff's proposed amendments," without, however, conceding those amendments are timely or supported by good cause. (Opp. Br. at 8.) Taken together, the parties' submissions indicate that DGL does not oppose amendment to the extent set forth in the non-highlighted portions of the proposed amended contentions and chart submitted by Razor with its motion.

corresponding claim chart, Razor's motion is granted. The following analysis focuses on the two areas in which the parties disagree: (1) Razor's proposed amendments of its doctrine of equivalents contentions and (2) Razor's proposed amendment of a literal infringement contention pertaining to the claim term "data from," as construed by the District Court in its February 19, 2021 *Markman* Opinion. The Court will discuss each one in turn.

### A.    Doctrine of Equivalents Contentions

As summarized above, Razor's Infringement Contentions, initially served in October 2019 and as amended thereafter, specified the claims and limitations of the RE964 Patent it contends are met by DGL's Hover-1 products, identified the aspects of the accused products on which those claim elements are found, and asserted infringement both literally and under the doctrine of equivalents. Razor maintains no more is required under the Patent Rule 3.1. However, Razor brings this motion, it explains, to add detail relating to the equivalence theory of infringement because it has been requested by DGL and, moreover, because it would avoid superfluous motion practice to test the sufficiency of the existing contentions. DGL disputes Razor's legal position as contrary to the requirements of the Patent Rules and, moreover, disputes that it has ever "requested" additional information from Razor.

To provide context for its decision on Razor's motion, the Court briefly reviews Patent Rule 3.1, which governs disclosure of asserted claims and infringement contentions. In relevant part, the Rule provides that contentions must disclose "each claim of each patent in suit that is allegedly infringed." L. Pat. R. 3.1(a). Moreover, the party asserting infringement must provide "a chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality," L. Pat. R. 3.1(c), and stating "whether each limitation of each

asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." L. Pat. R. 3.1(e).

The latter requirement refers to the two recognized theories of patent infringement. "Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed Cir. 2004). In contrast, under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). In other words, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe when the differences between claimed invention and accused product are "insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (citing *Graver Tank*, 339 U.S. at 608). One way of establishing equivalence is "by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Crown Packaging*, 559 F.3d at 1312. The Federal Circuit has held that "[t]he function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices." *Id.*

Regarding the existence of good cause to amend its doctrine of equivalents contentions, Razor emphasizes its amendments neither introduce a new theory of infringement nor alter any disclosures concerning the claim limitations allegedly met by the Hover-1 products. Rather,

Razor argues its proposed amendments merely expand on the doctrine of equivalents theory set forth in its initial infringement contentions served early in this action, chiefly to address DGL's position that those contentions were deficient. It stresses that DGL's insistence on a demonstration or explanation of equivalence according to the function-way-result test is not consistent with Local Patent Rule 3.1 or with the Federal Circuit's recognition of alternate methods for proving equivalence.[4] Nevertheless, Razor maintains, it endeavored to learn how, in DGL's view, its contentions fell short, so that Razor could provide the requested information. Razor highlights its ongoing communications with DGL about the purported deficiencies and stresses it was operating within the amendment-objection framework created by the September 2020 Order. This framework, Razor contends, put the burden on the responding party to raise any objections to the sufficiency of proposed amended contentions. Razor asserts its repeated efforts to confer with DGL and to determine how the Infringement Contentions could be supplemented to satisfy DGL's concerns demonstrate its diligence in amending the contentions and satisfies the good cause standard applicable to this motion.

Razor further relies on the September 2020 Order to argue that its application to amend is timely. It argues that DGL's characterization of events—in which a full nineteen months passed between DGL's response on the initial Infringement Contentions and Razor's filing of this

---

[4] Raising this argument in its reply brief, Razor contends DGL is wrong to assert that its contentions under the doctrine of equivalents are insufficient for failure to include a function-way-result analysis because the "Local Patent Rules do not require disclosure of legal analysis that is not required to prove infringement." (Reply Br. at 12.) Razor relies primarily on the Federal Circuit's observation that the Supreme Court's seminal decision on the doctrine of equivalents "set out two frameworks for evaluating equivalence—the familiar [function-way-result] test . . . and the insubstantial differences test…." *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866-67 (Fed. Cir. 2017) (citing *Graver Tank*, 339 U.S. at 609)). To be sure, equivalence may be established in different ways. However, Razor's argument here ignores that its conclusory equivalents contentions neither identify the approach it has elected to apply nor disclose a theory of infringement with the specificity courts in this district have interpreted Rule 3.1 demands.

motion—to oppose this motion as untimely, is simply incorrect. According to Razor, this account disregards the framework established by the September 2020 Order and the parties' subsequent communications. According to Razor, the September 2020 Order essentially restarted the clock on serving amended infringement contentions and any responses thereto and placed the burden on DGL to raise with the Court any alleged insufficiency in Razor's proposed amended contentions within a narrow timeframe. Moreover, Razor asserts the record demonstrates that, following the September 2020 Order, it initiated a months-long meet-and-confer process with DGL and promptly filed this motion within days of learning that DGL would not consent to its proposed doctrine of equivalents amendments.

After carefully reviewing the record in this case, the Court finds that Razor has failed to demonstrate either good cause to amend its doctrine of equivalents contentions or the timeliness of this motion.

1. Good Cause.

Several factors inform the good cause analysis, including "the reason for the delay and whether the moving party has been diligent, prejudice to the non-moving party, and the impact of a delay on judicial proceedings. *Cochlear Ltd. v. Oticon Med. AB*, No. 18-6684, 2019 WL 3429610, at *7 (D.N.J. July 29, 2019) (citations omitted). Diligence of the moving party is, however, the "dominant consideration" in determining whether good cause exists under Rule 3.7. *AstraZeneca AV v. Hanmi USA, Inc.*, No. 11-760, 2011 WL 5526009, at *4 (D.N.J. Nov. 14, 2011). The moving party may satisfy the diligence requirement if it acted diligently to discover that an amendment was appropriate and moved to amend its contentions promptly after learning an amendment was necessary. *AS America, Inc. v. Masco Corp. of Indiana*, No. 13–05, 2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013) (citing *O2 Micro Int'l Ltd.*, 467 F. 3d 1355). Moreover,

the Court need not consider whether the non-party would suffer prejudice unless it has first found the moving party was diligent in discovering that an amendment was appropriate and then promptly moved to amend its contentions. *Jazz Pharms., Inc.*, 2013 WL 785067, at *5 (citing *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D.Cal. 2009)).

Razor's good cause demonstration is based, largely, on the premise that it could not bring this motion until DGL explained specifically how it contended Razor's doctrine of equivalents contentions were lacking.[5] This argument, however, essentially shifts onto DGL the burden that Rule 3.1(e) places on Razor to fulfill the contentions requirement. Indeed, Razor's claim that it has demonstrated diligence, and thus good cause, by trying to obtain from DGL information to sharpen its equivalence amendments, is at odds with decisional law applying the Patent Rules.

Courts in this district have emphasized that a general assertion of infringement under a doctrine of equivalents theory does not satisfy the requirements of Local Rule 3.1(e). That issue arose in *Howmedica Osteonics Corp. v. Depuy Orthopaedics, Inc.*, in the context of the defendants' summary judgment motions for non-infringement. *See Howmedica Osteonics Corp. v. Depuy Orthopaedics, Inc.*, No. 11-6498, 2014 WL 6675923, at *5 (D.N.J. Nov. 24, 2014). In that case, the infringement contentions reserved the plaintiff's right to assert the doctrine of equivalents theory of infringement, to the extent any claim limitation did not literally infringe the patent in suit. *Id.* The *Howmedica* court rejected this blanket assertion as mere boilerplate and insufficient under the Patent Rules to allow the plaintiff to proceed under that theory. *Id.* It reasoned that Patent Rule 3.1(e), which requires disclosure of the theory of infringement as to each claim limitation, must be interpreted in the context of the Patent Rules' goal of facilitating

---

[5] Rule 3.7 provides a non-exhaustive list of circumstances which may constitute good cause to amend, for example, a claim construction by the District Court different from that proposed by the party seeking amendment. L. Pat. R. 3.7. Razor does not rely on any of those examples to argue that good cause exists to support its proposed doctrine of equivalents amendments.

"full, timely discovery and [providing] all parties with adequate notice and information with which to litigate their cases." *Id.* at *4 (quoting *TFH Publications v. Doskocil Mfg.*, 705 F. Supp. 2d 361, 366 (D.N.J. 2010)). Thus, the court concluded that, under Rule 3.1(e), the party alleging infringement must disclose its theory of infringement in the early stages of litigation with "precision and specificity." *Id.* The court held:

> A patentee cannot be permitted to assert a general DOE theory of infringement and then proffer a more specific DOE theory whenever it becomes convenient for it to do so. To allow such a practice would be to place the adversary in the position of having to constantly guess at the contours of the patentee's infringement theories.

*Id.* at 5.

Later, relying on *Howmedica*, a court in this district again provided clarification on the demands of Rule 3.1(e), in the case of *Eagle View Technologies v. Xactware Solutions, Inc.*, No. 15-7025, 2017 WL 5886004 (D.N.J. Nov. 29, 2017). In *Eagle View*, the plaintiffs asserted the defendants' product met the claims of the patent in suit "either literally or under the doctrine of equivalents" but reserved the right to supplement those contentions. *Id.* at 4. They moved to amend their infringement contentions to add doctrine of equivalents information. *Id.* The court denied the motion for lack of good cause. *Id.* at 4. In doing so it concluded that the absence of substantive information in the plaintiffs' infringement contentions regarding the doctrine of equivalents theory rendered them mere "boilerplate." *Id.* at 4-5. The court found the plaintiffs' contention insufficient under Rule 3.1, holding the Patent Rules do not countenance a party's mere recitation that a claim limitation is satisfied under the doctrine of equivalents, only to be supplemented with actual content later in the action. *Id.* The court cautioned:

> If, as plaintiffs seem to argue, they were free to amend their contentions at their leisure, it would minimize the mandatory nature of the Local Rules. If the Court accepted plaintiffs' argument plaintiffs could amend without

> good cause simply by serving deficient infringement contentions and
> waiting for their adversary to ask for a supplement. This is unacceptable.

*Id.* at *3.

This Court finds *Howmedica* and *Eagle View* instructive in evaluating whether Razor has met the good cause standard for amending its infringement contentions. Razor attempts to distinguish each as inapposite, arguing that its contentions disclosed from the outset the doctrine of equivalents theory of infringement limitation-by-limitation in its claim chart, after precisely identifying where on the Hover-1 product the claim element was satisfied. In other words, Razor contends that, unlike the factual scenarios presented in *Howmedica* and *Eagle View*, Razor did not provide blanket statements concerning the potential applicability of the doctrine of equivalents but rather complied with Rule 3.1(e). The Court disagrees. Although *Howmedica* involved one broad-brush assertion that the doctrine of equivalents applied, Razor's repetitive invocation of the doctrine throughout the infringement contentions does not change the fact the assertion was merely conclusory. Moreover, *Eagle View* made clear that doctrine of equivalents contentions unsupported by substantive information concerning the presence of the limitation on an equivalence theory amount to mere boilerplate.

The doctrine of equivalents amendments proposed here, Razor argues, merely amplify already disclosed theories with additional content it could not provide until receiving input from DGL. Thus, according to Razor, good cause is demonstrated by Razor's months-long pursuit of that input from DGL. This argument turns Patent Rule 3.1 on its head. From the start, the burden was on Razor to crystallize its theory of infringement, and to do so early in the litigation. Yet, despite the "precision and specificity" demanded by Rule 3.1(e), Razor failed to provide any basis for its contention that the difference between any given limitation of the RE964 Patent on Razor's product and on the accused product was insubstantial. Razor's stance that it could not

discern what additional information should be provided with the doctrine of equivalents contentions until it received guidance from DGL is unpersuasive. Razor's failure to specifically delineate its doctrine of equivalents infringement theory either in its original infringement contentions or in its amended contentions precludes it from asserting that theory now. On this record, the Court cannot find Razor was diligent in amending its contentions. Accordingly, Razor has failed to demonstrate good cause to amend its doctrine of equivalents infringement contentions.

### 2.   Timeliness

Razor's motion to amend its doctrine of equivalents contentions also fails because of untimeliness. Here, the Court is guided by the well-established principle that the Patent Rules "are designed to require parties to crystallize their theories of the case *early in the litigation* and to adhere to those theories once they have been disclosed." *King Pharm.*, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010); *see also O2 Micro Int'l Ltd.*, 467 F.3d at 1367-68. The amendments sought by Razor now were by no means introduced early in the litigation. In fact, this motion to amend was filed on July 30, 2021, almost two years after the initial infringement contentions were served in October 2019. Indeed, by the time Razor sought to "supplement" its doctrine of equivalents contentions, the District Court had already held a *Markman* hearing and ruled on the claim construction, issuing its *Markman* order on February 19, 2021. Razor tries to minimize the lapse of time by relying on the Court's September 2020 Order and arguing that the order not only contemplated further amended infringement contentions but also placed the burden on the party claiming the contentions were deficient to raise that issue with the Court. However, the record belies this characterization of the timeline. Long before the September 2020 Order was issued, DGL clearly stated in its Response to Infringement Contentions that Razor "provide[s] no

explanation or basis for its allegations that the Accused Instrumentalities allegedly meet any claim element as an 'equivalent thereof' under the Doctrine of Equivalents." (Jaketic Decl., Ex. 2.)

Although Razor argues that DGL could have filed a motion challenging the sufficiency of its contentions, that argument elides the fact that the burden of providing sufficient information under Rule 3.1 remained on Razor. Even if the Court were to accept Razor's invitation to interpret the September 2020 Order as creating ambiguity about Razor's obligations under Rule 3.1, which the Court declines to do, the record here still militates strongly against a finding that Razor's amendments are timely.[6] Indeed, DGL reiterated that Razor's Second and Third Infringement Contentions were likewise deficient with respect to their doctrine of equivalents assertions. At Razor's request, DGL provided a detailed explanation of its position in a December 24, 2020 letter, in which DGL expressed concern that Razor would spring on DGL, in an expert report, new infringement theories including new theories concerning the doctrine of equivalents. Citing both *Howmedica* and *Eagle View*, DGL stated its view that this was not permitted by the Patent Rules. Yet, another seven months passed before Razor filed this motion. Waiting to amend contentions "frustrates the purpose of the Local Patent Rules in shaping discovery." *Nautilus Neurosciences*, 2013 WL 7901901, at *7 (finding a motion to amend invalidity contentions untimely under Rule 3.7 where the moving party waited five months after it became aware of the need to raise the proposed amendment).

---

[6] If, as Razor argues, the Court intended the September 2020 Order to upend the well-established procedural and substantive requirements of Rule 3.1, and shift Razor's burden under that Rule to DGL, the Court would have expressed that intention directly. Moreover, if the parties had intended the interpretation Razor now urges, they could have submitted a proposed order manifesting that desire beyond dispute. That they did not strongly indicates the September 2020 Order sought to resolve amendment disputes efficiently without, however, disturbing or altering the Local Patent Rules.

The Court acknowledges that the parties were engaged in meet-and-confer sessions about the doctrine of equivalents contentions. However, DGL's position on their insufficiency was abundantly clear as of December 2020. The futility of working to amend them by consent, under its interpretation of the September 2020 Order or otherwise, should have been apparent to Razor at that time. Its delay, without a justifiable reason, in seeking to provide the grounds for its doctrine of equivalents contentions, is unacceptable in light of the Patent Rules' purpose and conservative standard for amending contentions.

Accordingly, to the extent Razor seeks to amend its infringement contentions with respect to the doctrine of equivalents, the motion is denied.

### B.    Literal Infringement Contentions

In relevant part, Razor also seeks leave to amend its literal infringement contentions to alter the claim chart's explanation of how the accused products meet limitations in both of the RE964 Patent's independent claims, Claim 1 and Claim 10. The primary limitation at issue in Claim 1 focuses on the claimed invention's control logic system. The limitation states the invention has:

> Control logic that drives the first wheel toward self-balancing the first foot placement section in response to position data from the first sensor and that drives the second wheel toward self-balancing the second foot placement section in response to position data from the second foot placement section.

(Katzenellenbogen Decl., Ex. 4, Claim 1[e].) The limitation in Claim 10 similarly concerns the control logic which drives the invention's self-balancing mechanism, replacing "second foot placement section" with "second sensor," as follows:

> Control logic that drives the first wheel toward self-balancing the first foot placement section in response to position data from the first sensor and that rives the second wheel toward self-balancing the second foot placement section in response to position data from the second sensor.

(*Id.*, Claim 10[e].) As to both these limitations, as well as the limitation in Claim 10[d], Razor's proposed amended claim chart would change "data *from*" to "data *regarding*" foot placement sections and/or sensors.

Razor argues it has good cause for this amendment based on the District Court's *Markman* opinion. Razor asserts that in that opinion, the District Court observed that because the term "position data from" was not disputed, the District Court refrained from construing the term. Razor maintains the District Court essentially left untouched its proposed construction of "position data from" to mean "data regarding the position of." It now wishes to amend the infringement contentions to state the control logic responds to "data regarding" the position of foot placements and sensors rather than "data from" on the grounds that the amendments are based on the construction it has previously proposed.

DGL argues these changes would introduce a new theory of literal infringement, which is based on a construction rejected by the District Court. Whereas Razor maintains its amendment is consistent with the District Court's *Markman* opinion, DGL maintains the District Court "declined to adopt" Razor's proposed construction of "position data from." (DGL Br. at 13.) Moreover, DGL argues that, unlike its own motion to amend invalidity contentions, filed after the *Markman* opinion construed the term "self-balancing vehicle" in a manner different than DGL had proposed, Razor's motion to amend contentions is not tied to any such different claim construction.

Razor has not carried its burden of demonstrating good cause for the amendments. First, its argument that the disputed amendments to its literal infringement contentions are warranted by the District Court's claim construction opinion is inconsistent with Rule 3.7. The Rule recognizes good cause to amend may exist when the District Court construes a claim in a manner

*different* from that proposed by the party seeking amendment. Courts have recognized that Local Patent Rule 3.7 "is intended to allow a party to respond to an unexpected claim construction by the court." *Takeda Pharm. Co. Ltd. v. Sun Pharma Global FZE*, No. 14-4616, 2016 WL 9229318, at *4 (D.N.J. May 16, 2016) (quoting *Finisar Corp. v. DirecTV Group Inc.*, 424 F Supp. 2d 896, 901 (E.D. Tex. 2006)). However, Razor does not tie its proposed amendments, concerning the infringement of limitations discussing "data position from," to any ruling by the District Court in its *Markman* opinion that was contrary to Razor's proposal or otherwise unexpected. It is well-established that a *Markman* ruling does not automatically grant a party a "free pass" to amend its contentions; rather the moving party must still demonstrate it "acted diligently to determine the amendment was necessary." *Jazz Pharms., Inc. v. Roxane Labs.*, No. 10-6108, 2015 WL 3822210, at*2 (D.N.J. June 19, 2015). Here, it is not at all clear what *Markman* ruling justifies Razor's amendments to the literal infringement contentions.

Indeed, both parties have distorted the impact of the *Markman* opinion's treatment of the term "position data from." By arguing that its amendments do not introduce a new theory of infringement—that is, substantially change the contentions—Razor suggests the District Court's decision to leave its proposed construction undisturbed provides tacit approval for these changes. DGL, in contrast, misconstrues the *Markman* opinion as having rejected Razor's proposed construction. The District Court did not, however, make such a stark decision in favor of one party or the other. Rather, it found no reason to reach the issue. Regarding the control logic limitation in which the term "position data from" appears, the District Court compared the parties' respective arguments on the term and concluded: "it does not appear that the parties actually dispute the proper construction of the term 'position data from' and, accordingly, the Court does not construe it herein." (*Markman* Opinion, ECF 134, at 23 n.7.)

Razor also argues it has demonstrated good cause because DGL itself has asserted, in its motion to amend its invalidity contentions, that the District Court rejected both parties' proposed construction of the term "self-balancing vehicle" and declined to adopt either party's construction of "drives." Based on the *Markman* ruling concerning self-balancing vehicle, DGL has, in a separate motion, sought to amend its invalidity contentions. Razor maintains that, because DGL's interpretation of the District Court's construction of these terms affects most, if not all, claim limitations, Razor likewise has good cause to amend its contentions. This argument is unavailing. Razor provides no legal authority, in either the Patent Rules or caselaw, indicating that another party's interpretation of a claim construction opinion gives rise to good cause to amend.[7]

"The party seeking to amend its contentions bears the burden of establishing diligence." *Takeda*, 2016 WL 9229318, at *4 (citing *O2 Micro*, 467 F.3d at 1366). Razor has not carried that burden here, for the reasons discussed. Accordingly, insofar as its proposed amendments to its literal infringement contentions are opposed by DGL, the motion is denied.

## IV.   CONCLUSION

For the foregoing reasons, as to the disputed amendments set forth in the highlighted portions of Razor's proposed Fifth Amended Infringement Contentions, Razor has failed to meet the Rule 3.7 standard of timeliness and good cause. Accordingly, insofar as Razor's motion

---

[7] Razor has not opposed DGL's June 25, 2021 motion to amend its invalidity contentions [ECF 167] but maintains DGL's arguments that its motion is timely and supported by good cause should apply with equal force to this motion. However, Razor's contention that DGL has taken inconsistent positions on its own motion and its opposition submitted here is misplaced. As discussed, this motion is not based on the District Court's construction of a claim in a manner different than Razor proposed and is thus fundamentally dissimilar to DGL's motion.

concerns those disputed amendments, it is denied. To the extent the DGL does not oppose the amendments, indicated by the non-highlighted portions of exhibits attached to Razor's motion, the motion is granted. An appropriate order will be filed herewith.

 /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated: January 5, 2022