NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAZOR USA LLC and SHANE CHEN, | Civil Action No. 19-12939-JMV-AME |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| DGL GROUP, LTD., | |
| Defendant. | |

This matter is before the Court on the motion by defendant DGL Group, Ltd. ("DGL") for leave to amend its Amended Invalidity Contentions ("Invalidity Contentions") [ECF 223]. Plaintiffs Razor USA LLC and Shane Chen (collectively, "Razor") oppose the motion. Having considered the parties' written submissions, the Court decides the motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons that follow, the motion is denied.

**I.  Background**

This patent infringement action involves a utility patent and a design patent pertaining to a self-balancing vehicle commonly known as a hoverboard. On this motion, DGL seeks leave to amend its Invalidity Contentions to include information it characterizes as "a recently discovered and clear legal basis for the invalidity of the asserted U.S. Design Patent D739,906 (the "D906 Patent")." (Mot. at 1, ECF 223-1.) Specifically, DGL learned the D906 Patent was issued by the United States Patent and Trademark Office ("USPTO") with incorrect design drawings and now

1

wishes to state in its Invalidity Contentions that the D906 Patent is invalid under 35 U.S.C. § 112(a), for the same reason the published drawings had been rejected during the patent's prosecution before the USPTO. Because the issue presented is limited in scope, the Court will herein set forth only the facts relating to this motion.[1]

The D906 Patent claims a distinct hourglass shape for the Razor hoverboard at issue in this lawsuit. The hoverboard's inventor, plaintiff Chen, filed his design patent application with the USPTO on March 12, 2013, claiming therein "[t]he ornamental design for a two-wheeled vehicle" as shown in the ten drawn figures he submitted with the application. (Mot. Ex. 2 at 8, ECF 223-3.) On August 20, 2014, Chen submitted replacement drawings (the "August 2014 drawings"). The August 2014 drawings were revised to remove two features from the claimed design: (1) the fender, located where the hoverboard's platform meets the lateral portion of the vehicle, and (2) the entire lateral portion. The August 2014 drawings were rejected by the USPTO Examiner, Cynthia Chin (the "Examiner"), for failing to comply with the description requirement of 35 U.S.C. § 112(a). The Examiner determined that the original written disclosure did not support the new matter introduced to the design, identifying it as "Removal of Hemispherical side structures" and "Alteration of platform structure." (*Id.* at 35-36.)

Thereafter, on December 28, 2014, Chen submitted another set of replacement drawings, which consisted of only five figures (the "December 2014 drawings"). To address the flaws previously identified by the Examiner, the December 2014 drawings eliminated any depiction of the fender, represented the lateral portion of the hoverboard using broken lines, and amended the

---

[1] The Court notes it writes only for the parties, which are familiar with the facts of this case. Moreover, previously issued decisions, including this Court's January 5, 2022 Opinion and the Honorable John M. Vazquez's February 19, 2021 Opinion, have set forth the factual and procedural background of this action at length, and thus this Opinion need not repeat those summaries.

2

application's broken line statement to specify, in part, that "the broken lines represent functional components which are provided for context and do not form a part of the claimed design." (*Id.* at 40.) The Examiner again rejected the drawings under 25 U.S.C. § 112(a) for failing to comply with the statutory written description requirement. She found that the original disclosure did not reasonably convey the design claimed, specifically "Removal of Hemispherical side structures" and "Addition of arbitrary boundary line." (*Id.* at 62.) However, the Examiner suggested that if Chen wished to claim only the tapered design of the vehicle's midsection while making clear that the fenders and lateral portions are not claimed aspects of the design, he could submit a revised set of drawings converting the entire non-claimed section to broken lines. The Examiner also provided Chen with an example drawing of how this could be achieved.

On July 9, 2015, Chen responded by submitting a further revised set of replacement drawings consisting of five figures (the "July 2015 drawings"). The July 2015 drawings had amended the previous set of figures to implement the Examiner's suggestion, depicting both the fenders and lateral boundaries using broken lines. The Examiner allowed the July 2015 drawings, and Chen's design patent application was approved.

The D906 Patent issued on September 29, 2015. However, the USPTO erroneously published the rejected December 2014 drawings with the issued patent, instead of the approved July 2015 drawings. The error remains uncorrected.

DGL states it became aware of this flaw as a result of the Declaration of Joel Delman, Razor's expert on design patents, which was submitted by Razor in support of its motion for a preliminary injunction, filed June 23, 2021 (the "Delman Declaration"). In the declaration, Delman asserted he had "reviewed the '906 patent's prosecution history, examined the patent's cited design patent prior art references, and reviewed its other prior art references." (Delman

Decl. ¶ 30, ECF 158-1.) Yet, DGL points out, Delman made no mention that the patent was published with the wrong set of drawings and proceeded to analyze the claimed design as set forth in the five drawing figures published with the D906 Patent, that is, the December 2014 drawings. (*Id.* at 8-13.) DGL asserts that, upon reviewing the Delman Declaration, it undertook its own investigation of the D906 Patent's prosecution history, whereupon it discovered the discrepancy between the published drawings and the approved drawings. DGL notes that, at the time the Delman Declaration was submitted, its previously filed motion for partial judgment on the pleadings was pending. That motion, which sought dismissal of the claim for infringement of the D906 Patent, was denied without prejudice on November 4, 2021.

On November 24, 2021, DGL filed this motion under Local Patent Rule 3.7 for leave to amend its Amended Invalidity Contentions.[2] The amendment at issue relates to the error in the drawings published with the D906 Patent. DGL seeks to add a contention that the patent is invalid for the same reason asserted by the Examiner when she rejected the December 2014 drawings. In relevant part, the proposed Third Amended Invalidity Contentions states:

> The 'D906 Patent is invalid under 35 U.S.C. § 112(a) as failing to comply with the written description requirement, because the issued drawings were filed in an amendment on December 28, 2014 that introduced new matter not supported by the original disclosure. The original disclosure does not reasonably convey to a designer of ordinary skill in the art that Shane Chen was in possession—at the time the application was filed—of the design claimed in the drawings that ultimately issued in the 'D906 Patent.

---

[2] To avoid confusion, the Court notes that when this motion was filed, DGL's Amended Invalidity Contentions was the then-operative set of contentions. Thereafter, on January 5, 2022, the Court granted another, though unrelated, motion by DGL for leave to serve its Second Amended Invalidity Contentions. DGL now seeks further amendment as set forth in the Exhibit 1 to the motion, a proposed "Third Amended Invalidity Contentions," which sets forth the new information in a redlined revision of the Amended Invalidity Contentions.

(Mot. Ex. 3 at 14, ECF 223-2.) After reciting some details regarding the December 2014 drawings, and the Examiner's basis for rejecting them, the proposed amendment to DGL's Invalidity Contentions asserts that, as the D906 Patent issued with the incorrect set of drawings, and remains uncorrected, it is invalid and unenforceable. (*Id.*)

## II. Discussion

Local Patent Rule 3.7 provides that "[a]mendment of any contentions . . . required to be filed or exchanged pursuant to these Local Patent Rules may be made only by order of the Court upon a timely application and showing of good cause." L. Pat. R. 3.7. The party applying for leave to amend contentions under Rule 3.7 must demonstrate that (1) the application is timely; (2) there is good cause for the amendment; and (3) the adverse party will not suffer undue prejudice if leave to amend is granted. *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2015 WL 4138982, at *4 (D.N.J. July 9, 2015). "Sufficiently satisfying the elements set forth in Rule 3.7 is not a simple undertaking, and requires the movant to overcome a substantial preference against granting the amendment." *Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, No. 11-1997, 2013 WL 7901901, at *2 (D.N.J. Jan. 23, 2013).

Regarding good cause, the Rule lists various circumstances that may satisfy this requirement, but as the list is non-exhaustive, a court evaluating a motion to amend contentions may consider other factors, including, among others, the reason for the delay in seeking amendment and "the importance of the information to be excluded." *Abraxis BioScience, LLC v. Actavis, LLC*, No. 16-1925, 2017 WL 2079647, at *2 (D.N.J. May 15, 2017). The Federal Circuit has held that, to establish good cause, the moving party must "proceed with diligence in

5

amending [its] contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F. 3d 1355, 1366 (Fed. Cir. 2006). This principle has consistently been applied by courts in the District of New Jersey in evaluating motions under Rule 3.7. *See Wag Acquisition, LLC v. Gattyán Group S.à.r.l.*, No. 14-2832, 2020 WL 5105194, at *6 (D.N.J. Aug. 31, 2020) (affirming magistrate judge's denial of motion to amend contentions under Rule 3.7, finding movant had not demonstrated it diligently pursued information at issue in discovery or diligently filed the motion to amend); *Takeda Pharm. Co. Ltd. v. Sun Pharma Global FZE*, No. 14-4616, 2016 WL 9229318, at *4 (D.N.J. May 16, 2016) ("The party seeking to amend its contentions bears the burden of establishing diligence."); *Nautilus Neurosciences*, 2013 WL 7901901, at *2 (citing *O2 Micro Int'l* and holding that, to establish good cause, the party seeking leave to amend contentions "must demonstrate it acted diligently in discovering the basis for the proposed amendment.").

      Here, DGL wishes to amend its Invalidity Contentions to assert the D906 Patent is invalid on the basis that its published drawings are not supported by the patent's written description, as determined by the Examiner when she rejected the December 2014 drawings, and unenforceable for failure to include the claims on which Razor asserts infringement of the D906 Patent. DGL maintains the published drawings are materially different than the drawings which were actually approved by the Examiner and argues that, because "design patents typically are claimed as shown in the drawings," *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F3d 665, 679 (Fed. Cir. 2008), Razor cannot enforce the right to a design not claimed in the D906 Patent issued by the USPTO.

6

DGL maintains that the importance of the information it wishes to add provides good cause for amending the Invalidity Contentions under Rule 3.7. The amendment is necessary, DGL contends, to bar Razor from enforcing a patent it did not rightly attain. Citing *H-W Technologies, L.C. v. Overstock.com, Inc.*, 758 F.3d 1329 (Fed Cir. 2014), DGL argues that allowing Razor to claim infringement of the uncorrected D906 Patent would be inequitable and contravene Federal Circuit authority

In *H-W Technologies*, the plaintiff patentee had been barred from asserting infringement of a patent claim where a material limitation had inadvertently been omitted from the claim and the omission was not evident from the face of the patent. *H.W. Tech.*, 758 F.3d at 1335. The limitation had been mistakenly omitted by the USPTO when it issued the patent in suit. *Id.* at 1333. In its complaint for infringement, the plaintiff patentee had asserted the uncorrected claim. *Id.* Affirming the district court's ruling, the Federal Circuit held:

> When, as here, a [patent] claim issues that omits a material limitation, and such omission is not evident on the face of the patent, the patentee cannot assert that claim until it has been corrected by the PTO. To hold otherwise would potentially permit patentees to assert claims that they never asked for nor rightly attained. Such a result would be inequitable and undermine the notice function of patents.

*Id.* at 1335.

However, the impact of the foregoing holding on the good cause inquiry before this Court is not as conclusive as DGL suggests. Initially, the Court notes the distinct procedural posture and substantive nature of the ruling on appeal in *H-W Technologies*. There, the district court had construed the two patent claims at issue and granted summary judgment of invalidity, finding, in relevant part, that the uncorrected patent claim was indefinite. *Id.* at 1331. The plaintiff patentee, the Federal Circuit noted, had essentially conceded it should not be permitted to assert the uncorrected claim. *Id.* at 1334-35. Neither the district court's ruling nor the Federal Circuit's

7

decision considered the circumstances in which leave to amend contentions, to include an invalidity theory based on an error in the patent in suit, would be warranted. More importantly, the Federal Circuit proceeded to clarify that its holding that a patentee cannot assert an uncorrected claim "is, in some ways, more akin to unenforceability than invalidity—the framework generally used by the parties and the district court here. For example, unlike invalidity, unenforceability of a patent may be cured under certain circumstances." *Id.* at 1335. The court's clarification, though offered as dicta, indicates that permitting DGL to amend its Invalidity Contentions is not, as DGL argues, required to prevent an inequitable result.

      This Court recognizes that, in this case, DGL's proposed amendment does not merely assert that the uncorrected D906 Patent is unenforceable due to the uncorrected drawings but rather expressly contends it is invalid under 35 U.S.C. § 112(a), for the very same reasons the December 2014 drawings were rejected by the Examiner. This point, however, begs the question of why such an amended contention, derived wholly from the prosecution history of the D906 Patent, comes before the Court in a motion filed by DGL over two years after filing its initial Invalidity Contentions. This question requires close scrutiny, as the moving party's diligence is the paramount consideration on a motion for leave to amend under Rule 3.7. *AstraZeneca AV v. Hanmi USA, Inc.*, No. 11-760, 2011 WL 5526009, at *4 (D.N.J. Nov. 14, 2011) (holding that diligence is the "dominant consideration" in determining whether good cause exists the Rule); see also *AS America, Inc. v. Masco Corp. of Indiana*, No. 13–05, 2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013) (holding movant must demonstrate it acted diligently to discover that an amendment was appropriate and moved to amend its contentions promptly after learning an amendment was necessary).

DGL maintains it has satisfied the Rule's diligence requirement because it was prompted by the Delman Declaration to conduct a through review of the D906 Patent's prosecution history. According to DGL, it "learned that the D906 Patent published with rejected drawings when it investigated Mr. Delman's claim that he 'reviewed the '906 patent's prosecution history.'" (Mot. at 8, quoting Delman Decl. at ¶ 30.) DGL points out the error in the issued D906 Patent went undetected by Razor or its expert Delman until it was finally recognized due to DGL's "diligence in addressing the analysis presented by the Plaintiff's expert." (*Id.* at 8.)

Razor, in its opposition, casts doubt on DGL's assertion that the Delman Declaration gave rise to notice of previously undiscoverable information about the D906 Patent's drawings or prosecution history. Razor points out that, in his declaration, Delman did not discuss or elaborate on the prosecution history; rather he merely stated he reviewed it and proceeded to render his opinions regarding infringement of the D906 Patent. It argues DGL's attempt to establish diligence falls decidedly short, for failure to indicate what aspect of the Delman Declaration could have reasonably caused it to notice, for the first time, that the prosecution history would reveal the information on which it bases this motion. Indeed, Razor emphasizes that, contrary to DGL's assertions of diligence, the information has been in DGL's possession since at least October 2, 2019, when Razor produced the D906 Patent's prosecution history. Yet, Razor points out, neither DGL's original Invalidity Contentions, served on November 20, 2019, nor the repeatedly amended Invalidity Contentions raised any arguments related to the D906 Patent's prosecution history.

Having considered these arguments and reviewed the Delman Declaration, the Court is not persuaded that DGL acted diligently in discovering the information it now seeks to add to its Invalidity Contentions. DGL does not dispute that the substance of the invalidity contention at

9

issue is derived solely from the prosecution history of the D906 Patent. Nor does DGL dispute that it has had the prosecution history since the earliest stage of this action, even before serving its original Invalidity Contentions. Instead of explaining why it did not, or could not, discover the currently presented invalidity grounds upon an earlier review of this material, DGL claims that a latter-filed declaration by Razor's design expert put it on notice of the drawing error. Yet, DGL fails to identify any statement or analysis in that declaration that, for the first time, pointed to something amiss with regard to the D906 Patent and its published drawings. DGL asserts it discovered the new basis for invalidity through its investigation of the Delman Declaration's reference to the patent's prosecution history but does not indicate how Delman's lone, and unadorned, statement that he reviewed the prosecution history put it on notice of information not previously available to DGL. To be clear, the Court does not question that, upon being served with Razor's motion for a preliminary injunction, in support of which the Delman Declaration was filed, DGL undertook a thorough review of the design patent's prosecution history and realized there was a discrepancy between the approved drawings and the published drawings. However, DGL itself concedes that it had access to this information all along and, further, that the error is evident from a careful review of the prosecution history. The burden is on DGL to demonstrate it acted diligently to discover that an amendment was appropriate. Its belated review of key documents pertaining to one of the two patents in suit, documents which had been in DGL's possession for over two years before filing this motion, does not carry that burden. The Court therefore finds DGL has failed to establish good cause to amend its Invalidity Contentions.

   For this same reason, the Court further finds the motion is untimely. The Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *King Pharm., Inc. v. Sandoz Inc.*, No.

08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010); *see also O2 Micro Int'l Ltd.*, 467 F.3d at 1367-68. The record indicates DGL had ample time to review the prosecution history of the D906 Patent and ample opportunity to seek leave to amend contentions to add grounds for contending the patent is invalid. Here, it offers no persuasive explanation for the delay in bringing this motion to amend its Invalidity Contentions. Although DGL stresses that Razor itself failed to detect the patent error until raised by DGL in November 2021, this argument is inapposite. The focus on this motion is on whether DGL has acted promptly, not on the actions of Razor in discovering, or failing to discover, a purportedly material error in the patent.

Moreover, even if the Court were to credit DGL's assertion that it was diligent in first learning of the D906 Patent error upon investigation of the Delman Declaration, DGL's assertion that it acted promptly in bringing this motion is unconvincing. The Delman Declaration was filed on June 23, 2021, but this motion for leave to amend was not filed until November 24, 2021. DGL suggests that bringing this motion sooner did not seem necessary, given that a motion seeking dismissal under Rule 12(c) of the claim for infringement of the D906 Patent was then pending, but this explanation rings hollow when juxtaposed against DGL's argument that the proposed invalidity contention is of vital importance and needed to prevent an inequitable result. Waiting to amend contentions "frustrates the purpose of the Local Patent Rules in shaping discovery." *Nautilus Neurosciences*, 2013 WL 7901901, at *7 (finding a motion to amend invalidity contentions untimely under Rule 3.7 where the moving party waited five months after it became aware of the need to raise the proposed amendment).

In sum, DGL could have, and under controlling law should have, acted sooner. That failure to act in a diligent and timely manner requires denial of this motion.

### III.  CONCLUSION

For the foregoing reasons, the Court finds DGL has not carried its burden of establishing this Rule 3.7 motion for leave to amend its Invalidity Contentions is timely or supported by good cause.[3] Accordingly,

**IT IS** on this 10th day of March 2022,

**ORDERED** that DGL's motion for leave to further amend its Invalidity Contentions [ECF 223], as set forth in the proposed Third Amended Invalidity Contentions attached to the motion, is **DENIED**.

　　　　　　　　　　　　　　　　　　　　/s/ *André M. Espinosa*
　　　　　　　　　　　　　　　　　　　　ANDRÉ M. ESPINOSA
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[3] While lack of prejudice to the non-moving party must also be established to obtain leave to amend under Rule 3.7, this requirement need not be evaluated unless the moving party has shown it was diligent in discovering that an amendment was appropriate and promptly moved to amend its contentions. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 WL 785067, at *5 (D.N.J. Feb. 28, 2013) (citing *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D.Cal. 2009)). Accordingly, here, there is no need for the Court to consider whether permitting DGL to amend would be prejudicial to Razor.